SECURITY BENEFIT LIFE INSURANCE COMPANY, Plaintiff-Appellee,
v. ROBINSON, Superintendent, Division of Insurance,
Defendant-Appellant.

Ohio Appeals, Tenth District, Franklin County.

No. 5746. Decided June 24, 1958.

Wright, Harlor, Purpus, Morris & Arnold, Earl F. Morris, Harry Wright, III, of Counsel, Columbus, for plaintiff-appellee.

William Saxbe, Atty. Genl., Huntington S. Carlile, First Asst. Atty. Genl., Richard O. Michael, Asst. Atty. Genl., Columbus, for defendant-appellant.

## OPINION

By MILLER, J.

This is a law appeal from a declaratory judgment of the Common Pleas Court wherein it was adjudged and decreed that under §§5729.02 and 5729.03 R. C., the defendant-appellant herein, Walter Robinson, as Superintendent of Insurance did not have the authority to levy and collect taxes upon the payments made to plaintiff-appellee by holders of fraternal benefit certificates issued prior to its transformation from a fraternal benefit society to a mutual reserve life insurance company, and enjoined the defendant from taking any action to collect such taxes.

The record reveals that the Security Benefit Association was organized and operated as a fraternal benefit society under the laws of Kansas prior to 1950. As such it maintained a lodge system, had a ritual, a representative form of government and maintained an orphanage,

a hospital and a home for the aged. The association had members in Ohio who had insurance certificates issued by it to them. It existed in Kansas and in Ohio, only as a fraternal benefit society and no tax was asserted in Ohio against it for the premiums or assessments paid by the Ohio members of the society.

In 1949, however, the society's board of directors determined that it was impossible to continue the corporatin as a fraternal benefit society and that it was in the best interests of the members to transform the corporation into a mutual life insurance company. The board of directors, on April 20, 1949, adopted the following resolution:

"WHEREAS, it has become impossible to conduct the affairs of the corporation as a fraternal benefit society organized on the lodge system with ritualistic form of work; and

"WHEREAS, it is the consensus of this Board that the interests of the members of the corporation would best be served by transforming the corporation into a mutual life insurance company;

"NOW, THEREFORE, BE IT RESOLVED, that the officers of the corporation be and they are hereby authorized, directed and empowered to take such steps as they may deem necessary and advisable to transform the corporation into a mutual life insurance company, all in accordance with the provisions of the Insurance Code of the State of Kansas."

Under the laws of Kansas a fraternal benefit society may be reorganized into a mutual life insurance company, which was done, effective January 2, 1950. Since the reorganization as a mutual life insurance company, the Security Benefit Life Insurance Company has abandoned its lodge system and ritual. There are no longer any lodges or supreme governing body with subordinate lodges in existence and the company does not have a representative form of government. Neither does it maintain an orphanage or an old age home. It does maintain, as a charity, a hospital, but the former members of the society have no contractual rights as former members to the use of the same. The new company has taken over the assets and assumed the obligations on the insurance certificates which were issued by the old fraternal society. However, these, certificates or policies are now no longer subject to any control or change by the action of the former society, whereas, before the reorganization the fraternal policyholders had the protection of the provision that the other members could be assessed if the reserves of the corporation are impaired or deficient. This right was irrevocably waived on reorganization and new premium rates for policyholders were computed.

Since the reorganization the new mutual life insurance company has been licensed in Kansas and in Ohio, solely as a mutual life insurance company and not as a fraternal benefit society.

The corporation has paid and is paying the tax imposed upon it by §§5729.02 and 5729.03 R. C., based upon the amount of premiums or assessments on the new business it has written in Ohio, since it became a mutual company, but it has not included in determining the amount of tax due, the amount of premiums or assessments received from policy-

holders of the policies or certificates issued before the company changed into a mutual company.

The Division of Insurance upon discovering that these premiums and assessments were not being included in determining the amount of tax due, billed the company for the additional amount. This action was then instituted for a declaratory judgment, claiming that it was exempt from paying a tax on the old business by reason of §3921.39 R. C., and asking that the defendant be enjoined from collecting said taxes or taking any steps to revoke the plaintiff's license to do business as a legal reserve life insurance company in this state. An examination of §5729.02 and 5729.03 R. C., reveals that a certain tax is imposed upon all foreign insurance companies for the privilege of doing business in Ohio, which is based upon the amount of premium paid on policies of insurance by residents of Ohio. However, §3921.39 R. C., exempts from such taxes those insurance companies which can qualify as fraternal benefit societies. This section provides:

"Fraternal benefit societies shall be governed by §§3921.01 to 3921.45, inclusive. R. C., and shall be exempt from all insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law enacted after June 14, 1911, shall apply to them, unless they are expressly designated therein."

The question immediately presented is whether or not the Security Benefit Life Insurance Company continued to be a fraternal society as to the former certificate holders after the transformation to a mutual legal reserve premium life insurance company. It is conceded that prior to such organization it qualified as such. Sec. 3921.01, et seq, R. C., spells out quite clearly what the attributes of a fraternal benefit society must be in order to qualify as such. Sec. 3921.01 R. C., reads as follows:

"Any corporation, society, order, or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which makes provision for the payment of benefits in accordance with §3921.09 R. C., is hereby declared to be a fraternal benefit society."

As stated previously, since the reorganization the plaintiff no longer operates under a lodge system with ritualistic form of work and representative form of government. As the plaintiff is claiming the benefit of the exemption to fraternal societies, the burden is upon it to clearly establish that it is such an organization. The one who claims an exemption from taxation must bring himself within the exemption by clear and unmistakable terms. It is said in 38 O. Jur. 852, Section 114:

"* * * The fact remains, however, that it is the theory of government that all property should bear its equal share of the cost and expense of government, and, since the law does not favor exemption of property from taxation, before particular property can be exempt it must clearly fall within the class of property authorized to be exempt by the Constitution. Again, since the sole power to exempt from taxation is vested in the general assembly, except as the Constitution itself makes

certain exemptions, and it has provided for the taxing of all property 'except only such property as may be expressly exempted,' the accepted rule is that an exemption cannot be presumed, or implied and read into a statute; or, stated conversely, to have an effective exemption, it must be expressed in clear and unmistakable terms, or at least with reasonable certainty, as the laws relating to exemption from taxation, being in derogation of equal rights, are strictly construed as against such exemption and in favor of the taxing authorities."

It is our conclusion that the evidence discloses that the plaintiff ceased to be a fraternal benefit society after the reorganization and is therefore not entitled to an exemption from the taxes imposed upon it by virtue of §§5729.02 and 5729.03 R. C. Those sections read as follows:

Sec. 5729.02 R. C.:

"Every insurance company incorporated by the authority of another state or government shall set forth in its annual statement to the superintendent of insurance the gross amount of premiums received by it from policies covering risks within this state during the preceding calendar year, less return premiums paid for cancellations and considerations received for reinsurance of risks within this state, provided that dividends paid or otherwise allowed to policyholders shall not be deducted except as provided in §5729.04 R. C. If the superintendent has reason to suspect the correctness of such statement he may make an examination at the expense of the state of the books of such company or its agents for the purpose of verifying them."

Sec. 5729.03 R. C.:

"If the superintendent of insurance finds the annual statement required by §5729.02 R. C., to be correct, he shall compute an amount of two and one-half per cent of the balance of such gross amount, after deducting such return premiums and considerations received for reinsurance, and charge such amount to such company as a tax upon the business done by it in this state for the period covered by such annual statement. All taxes collected pursuant to this section shall be credited to the general revenue fund."

The trial court was of the opinion that the above quoted sections were ambiguous and required interpretation, stating at page 5 of the opinion:

"The ambiguity arises by virtue of the fact that in these two sections the General Assembly uses the terms premiums on policies while in the chapter dealing with fraternal benefit societies, it makes no mention of policies but refers only to certificates and refers to contributions and assessments rather than premiums. In spite of the fact that counsel for the plaintiff have conceded that the amounts received by the plaintiff upon the certificates are premiums received upon policies, nevertheless that concession does not assist the Court in resolving the ambiguity nor does it eliminate the ambiguity. If the legislature intended that a legal reserve life insurance company, transformed from a fraternal benefit society, should pay a tax on the premiums received by it from certificates during the preceding year, such intention is difficult to ascertain, to say the least."

The court then proceeded to interpret the statute in favor of the plaintiff, basing the same upon the theory that it has always been the policy of this state to exempt fraternal benefit associations from taxation. We concede that such has been the policy of the state, but the plaintiff no longer qualifies as such an association. To us the taxing statutes cited supra appear to be clear, unambiguous and have a definite meaning. Sec. 5729.02 R. C., sets out who must file the annual statement and what it shall contain. It applies to insurance companies incorporated by the authority of another state; it must set forth in its annual statement the gross amount of premiums less certain items derived from policies covering risks within the state. There seems to be no dispute that these requirements are all met.

The plaintiff-appellee admits in his petition that it is an insurance company incorporated under Kansas law. There is no dispute as to the amount claimed due nor that it is based upon risks within the state and the amounts paid by the holders of the security benefit certificates are premiums from policies within the meaning of the statute. Sec. 5729.03 R. C., requires the superintendent of insurance to compute an amount of 2-½% of the balance of the gross amount less certain deductions contained in the company's annual statement, and charge such amount to the company as a tax on the business done by it in this state. The intention of the Legislature in enacting a statute must be determined from a proper interpretation of the language used as the language of a statute is its most natural expositor. It is said in 37 O. Jur. 514, Section 278:

"* * * Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. To interpret what is already plain is not interpretation, but legislation, which is not the function of the courts, but of the general assembly. Some statutes, it has been declared, are so clear that an attempt to make them clearer is a vain labor and tends only to obscurity. An unambiguous statute is to be applied, not interpreted. But where the court is confronted with an ambiguity, the rules of construction are invoked to ascertain the true legislative intent."

Only recently our Supreme Court decided the case of Katz v. Dept. of Liquor Control, 166 Oh St 229, wherein Judge Herbert made the following statement at page 231, which appears to be appropriate:

"It is too well established to require citation of authority that we look primarily for the intention of the Legislature as it is expressed in the enactment language which it adopted. Where the language itself clearly expresses the legislative intent, the courts need look no further. * * *

"It is not our province to guess what the Legislature intended but rather to ascertain the intent of the language which it did adopt, * * *."

From the language used in §§5729.02 and 5729.03 R. C., we conclude that the tax provided therein is imposed upon this plaintiff.

The judgment will be reversed as being contrary to law and remanded to the trial court with instructions to enter its judgment in accordance with this opinion, since sufficient uncontraverted facts ap-

pear in the record to entitle the defendant to the relief sought in its answer.

PETREE, PJ, BRYANT, J, concur.